IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LYNN DEAS, | Civ. No. 08-00534 HG-LEK |
| Plaintiff, | |
| vs. | |
| MEL'S TAXI, LLC, a Hawaii corporation; ALEXANDER KAPELA, individually and DOES 1 to 10, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ALEXANDER KAPELA AND MEL'S TAXI, LLC'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DOCS. 66 & 71)**

Plaintiff Lynn Deas suffers from myasthenia gravis and muscular dystrophy, requiring her to use a wheelchair.  Plaintiff claims that Defendant Alexander Kapela, a taxicab driver, discriminated against her by refusing to transport her pursuant to Hawaiian Revised Statute § 347-13.  She additionally claims that Defendant Kapela negligently disabled her motorized wheelchair while removing it from the taxicab causing emotional distress and limited ambulatory capability.

Defendants Kapela and Mel's Taxi, LLC, both move for partial summary judgment on all of Plaintiff's counts.  Both Defendants' motions are **GRANTED** in part and **DENIED** in part.

1

**PROCEDURAL HISTORY**

On December 18, 2009, this Court denied Defendant Alexander Kapela's Motion for Partial Summary Judgment and Defendant Mel's Taxi, LLC's Motion for Summary Judgment and granted Plaintiff Lynn Deas leave to file an amended complaint. (Doc. 53.)

On January 25, 2010, Plaintiff filled the First Amended Complaint. (Doc. 55.)

On August 18, 2010, Defendant Mel's Taxi, LLC, filed a Motion for Partial Summary Judgment, (Doc. 66), and a Separate and Concise Statement of Undisputed Facts in Support, (Doc. 68). On the same date, Defendant Alexander Kapela also filed a Motion for Partial Summary Judgment, (Doc. 71), and a Separate and Concise Statement of Undisputed Facts in Support, (Doc. 73).

On September 14, 2010, Plaintiff filed Oppositions, (Docs. 79 & 81), and two Separate and Concise Statements of Undisputed Facts in Support, (Docs. 80 & 82).

On September 21, 2010, Defendants filed Replies.  (Docs. 84 & 86.)

On October 5, 2010, this matter came on for hearing and the Court ruled from the bench.  This Order memorializes the Court's October 5, 2010 ruling.

**BACKGROUND**

The following is undisputed by the parties:

Plaintiff Lynn Deas suffers from myasthenia gravis and muscular dystrophy, requiring her to use a wheelchair. (Plaintiff's Concise Statement, Declaration of Lynn Deas ("Deas Decl.") at ¶ 10 (Doc. 82).)  On November 27, 2006, Plaintiff arrived at Kona International Airport with her husband Rich Kasprowicz and friend Judith Schulman.  (First Amended Complaint at ¶ 8 (Doc. 55).)  Defendant Alexander Kapela, a taxicab driver, was first in the airport taxicab rotation when the dispatcher called for a taxicab to transport the group to their hotel. (Defendants' Concise Statements, Declaration of Alexander Kapela ("Kapela Decl.") at ¶¶ 5-6 (Docs. 68 & 73); Plaintiff's Concise Statement, Exhibit 1, Telephonic Deposition of Lynn Davis Deas ("Deas Depo.")at pp. 32-33 (Doc. 82).)  Defendant Kapela initially offered to provide transportation to Plaintiff. (Defendants' Concise Statements, Exhibits A, Deposition of Alexander Kapela ("Kapela Depo.")  at p. 12 ln. 3-5 (Docs. 68 & 73).)  Airport security and Plaintiff's husband placed Plaintiff's motorized wheelchair into Defendant's taxicab trunk. (Kapela Depo. at p. 18 (Docs. 68 & 73); First Amended Complaint at ¶ 10).)  The loading process took several minutes as airport security attempted to retrieve a rope to secure the wheelchair into the trunk.  (Kapela Depo. at p. 22 ln. 5-25 (Docs. 68 & 73); Deas Depo. at p. 43 ln. 10-25 (Doc. 82).)

The remaining events are in dispute.  Plaintiff asserts that

3

her motorized wheelchair fit in the taxicab trunk.  (Deas Decl.
at ¶ 14 (Doc. 82).)  According to Plaintiff, at some point during
the loading process, Defendant Kapela "lost his temper" and
refused to transport her and her wheelchair.  (First Amended
Complaint at ¶ 12 (Doc. 55).)  She alleges that Defendant Kapela
removed the wheelchair from the trunk in a manner that rendered
it inoperable and ordered her to exit the taxicab.  (Id. at
¶¶ 13-14.)  Plaintiff submitted an airport security report that
suggests Defendant attempted to drive away from the airport but
was apprehended by airport security.  (Plaintiff's Concise
Statement, Declaration of H. Shan Wirt, Exhibit 2, Airport
Security Incident Report (Doc. 82).)  Plaintiff testified that
she was unable to work as a professional bridge instructor and
competitor for seven months because she was unable to use her
motorized wheelchair.  (Deas Decl. at ¶¶ 30, 36-45 (Doc. 82).)
She states that during the seven month period, as a result of
using her manual wheelchair, she lost mobility, lost
independence, and developed serious depression.  (Id. at ¶¶ 30-
34, 46-47.)

     Defendants claim that Plaintiff's motorized wheelchair did
not safely fit within Defendant Kapela's taxicab trunk.  (Kapela
Decl. At ¶ 8 (Docs. 68 & 73).)  According to Defendant Kapela, he
offered to give Plaintiff and her party a ride, but refused to
transport the wheelchair.  (Id. at ¶ 11.)  Defendant Kapela

                                4

stated he told Plaintiff the wheelchair would not fit in the
trunk before Plaintiff attempted to load the wheelchair.  (Id. at
¶ 7.)  He contends that Plaintiff and her husband, Rich
Kasprowicz, ignored his admonition and enlisted the help of
airport security to secure the wheelchair into the trunk.  (Id.
at ¶¶ 7-8.)  Defendants claim that Mr. Kasprowicz attempted to
force the wheelchair into the taxicab trunk and damaged it.
(Kapela Depo. at p. 18 (Docs. 68 & 73).)  Defendant Kapela
testified that during the loading process, Mr. Kasprowicz became
irritated with him and began scolding him for not having a rope.
(Id.)  According to Defendant Kapela, he suggested Plaintiff call
a different transportation service that could accommodate the
motorized wheelchair, but Plaintiff refused. (Id. at p. 25.)


                         STANDARD OF REVIEW

     Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To deny
summary judgment, there must be sufficient evidence that a
reasonable jury could return a verdict for the nonmoving party.
Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.
1996).

     The moving party has the initial burden of identifying for
the court the portions of the materials on file that it believes

demonstrate the absence of any genuine issue of material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

6

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing party rest on conclusory statements.  National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

In her First Amended Complaint, Plaintiff Lynn Deas brings two causes of action against Defendants Mel's Taxi, LLC ("Mel's Taxi") and Alexander Kapela.  Plaintiff alleges discrimination because of her disability in violation of Hawaii Revised Statutes § 347-13 ("Discrimination Statute"), (Count 1), and negligence (Count 2).

Defendants move for partial summary judgement on both

counts.[1]  Defendant Kapela's Motion for Partial Summary Judgment is identical to Defendant Mel's Taxi's Motion for Partial Summary Judgment with the exception of a single paragraph explaining the employee - employer relationship between the defendants.  Both motions are addressed herein as "Motions for Partial Summary Judgment" and are disposed of by this order.

Defendants argue: (1) Plaintiff has not sufficiently established subject matter jurisdiction; (2) Plaintiff did not suffer discrimination as prohibited under Hawaiian Revised Statute § 347-13; (3) Hawaii Revised Statute § 431:10C-306 abolishes Defendants' tort liability; (4) Plaintiff's injuries from using a non-motorized wheelchair were not foreseeable; and (5) Defendant's conduct does not warrant punitive damages.

## I.   PLAINTIFF ALLEGES SUFFICIENT FACTS TO MAINTAIN SUBJECT MATTER JURISDICTION

A district court has subject matter jurisdiction in a civil action when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

In this case, Defendants reside in the State of Hawaii and the Plaintiff resides in the State of California.  The parties agree there is complete diversity of citizenship.  At issue is

---

[1]Defendants do not seek summary judgment for any damages that may have occurred to the motorized wheelchair.

whether Plaintiff has alleged sufficient facts to meet the amount in controversy jurisdictional threshold of $75,000.

The amount in controversy is determined from the face of the complaint. Crum v. Circus Circus Enter., 231 F.3d 1129, 1131 (9th Cir. 2000); Singer v. State Farm Mutual Auto Inc. Co., 116 F.3d 373, 377 (9th Cir. 1997).  If the amount in controversy is challenged, but there are no allegations of bad faith, the complaint controls. Crum, 231 F.3d at 1131 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)). When challenging the amount in controversy the moving party must put forth sufficient evidence that, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." Budget Rent-A-Car v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (citing St. Paul Mercury Indem. Co., 303 U.S. at 289); Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986) ("[I]n the Ninth Circuit we have permitted a determination of 'legal certainty' when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement.").  When calculating the amount in controversy for a diversity case, punitive damages are counted. Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001).

The standard used to evaluate summary judgment is different than the one used to evaluate the amount in controversy for

diversity purposes.  The focus of the Court's inquiry is not whether there are genuine issues of material fact, but whether the defendant has put forward enough evidence or a rule of law that would make it "virtually impossible for a plaintiff to meet the amount-in-controversy requirement." Pachinger, 802 F.2d at 364; see Marquardt v. United Airlines, Inc., 781 F. Supp. 1487, 1490 (D. Haw. 1992) (applying the "legal certainty" test in a diversity jurisdiction analysis in a motion for summary judgment).

 The First Amended Complaint states, "[t]he amount in controversy exceeds $75,000." (First Amended Complaint at ¶ 6, (Doc. 55).)  It states that Plaintiff suffered injuries based on discrimination, reduced mobility, and damage to her motorized wheelchair.  Id. at ¶ 11-16.  Plaintiff is also seeking punitive damages.  While the complaint does not detail the amount of each injury, or even the total amount requested, the complaint does specifically allege that the damages in the case exceed $75,000. It is not fatal to Plaintiff's complaint that she only pleads the jurisdictional minimum.  See Crum, 231 F.3d at 1131.

 Without any evidence of bad faith, Plaintiff's allegations in the complaint are assumed true for the purposes of determining the amount in controversy.  The burden is on Defendants to show to a near legal certainty that Plaintiff's claim is actually for less than the jurisdictional minimum.  Pachinger, 802 F.2d at

10

364.  Defendants have not met their burden.  Defendants have not put forward any dispositive evidence or rule of law that would lead the Court to deny jurisdiction for diversity purposes.

Defendants' argue that Plaintiff has not sustained more than $75,000 in damages because Plaintiff's lost wages, physical damage to her wheelchair, or potential emotional distress could not meet the jurisdictional minimum.  Defendants' argument, however, does not consider the possibility of punitive damages and speculates about an amount of damages that are yet to be determined.  It is possible that a jury could award Plaintiff more than $75,000 based on Plaintiff's allegations and request for punitive damages.

Plaintiff alleges sufficient facts to meet the case in controversy's jurisdictional minimum.  Summary judgment with regard to subject matter jurisdiction is **DENIED**.


## II.  DISCRIMINATION CLAIM

Plaintiff alleges she suffered discrimination because of her disability in violation Hawaiian Revised Statute Chapter 347 Section 13(a), Blind, partially blind, physically handicapped; public places; public conveyances (hereafter "Discrimination Statute") when Defendant Kapela refused to transport Plaintiff and her motorized wheelchair.  The Discrimination Statute states:

> The blind, visually handicapped, and otherwise
> physically disabled are entitled to full and equal

> accommodations, advantages, facilities, and privileges
> of all common carriers, airplanes, motor vehicles,
> railroad trains, motor buses, street cars, boats, or
> any other public conveyances or modes of
> transportation, hotels, lodging places, places of
> public accommodation, amusement, or resort, and other
> places to which the general public is invited, subject
> only to the conditions and limitations established by
> law and applicable alike to all persons.

H.R.S. § 347-13(a).

To grant summary judgment, the Court must determine there is no issue of material fact upon which the parties do not agree. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

Here, the parties dispute what happened when Plaintiff's motorized wheelchair was loaded and unloaded from the taxicab. Plaintiff put forward evidence that Defendant Kapela refused to transport Plaintiff and her wheelchair because she was disabled. (Kapela Depo. at p. 26 (Docs. 68 & 73).)  In response, Defendants put forward evidence that Mr. Kapela refused to transport Plaintiff's motorized wheelchair because it would not fit into the taxicab trunk and that he was willing to transport Plaintiff and her husband.  (Kapeka Decl. at ¶ 8 (Docs. 68 & 73).)

In further support of Defendants' motion, Defendant Kapela argues he was exercising his right to refuse to transport "bulky items" pursuant to Hawaii County Code § 18-37.6 ("Bulky Items Regulation").  The Bulky Items Regulation states, "[a] taxicab driver may refuse to transport any item not capable of being

12

transported within the confines of the rear passenger compartments or trunk of the taxicab." Haw. Cnty. Code § 18-37.6 (1990). Defendants argue that the Discrimination Statute requires accommodation for persons with disabilities to the extent that compliance comports with local regulations. Here, Defendants argue, Defendant Kapela had a right to refuse to transport the motorized wheelchair because the wheelchair did not fit in the trunk of the taxicab pursuant to the Bulky Items Regulation.

It is unclear whether the Bulky Item Regulation applies in this case, however, the Court does not need to reach the issue. As it stands, Defendants' argument is a factual one, and those facts are disputed by Plaintiff. By arguing that the Bulky Items Regulation justified Defendant Kapela's conduct, Defendant assumes that the wheelchair did not fit in the taxicab. Whether the motorized wheelchair fit in Defendant Kapela's taxicab is a disputed issue of material fact.

The mere existence of the Bulky Items Regulation does not warrant granting summary judgment. Even if the Bulky Items Regulation could excuse Defendant Kapela from transporting the motorized wheelchair, it does not excuse his alleged refusal to transport Plaintiff altogether.

There exists a disputed issue of material fact. Summary judgment with regard to the discrimination claim is **DENIED**.

13

**III. HAWAIIAN REVISED STATUTE CHAPTER 431 SECTION 10C-306 DOES NOT ABOLISH OR LIMIT DEFENDANTS' LIABILITY**

Hawaiian Revised Statute Chapter 431 Section 10C-306 Abolition of tort liability (hereafter "Auto Liability Statute") generally abolishes tort liability in motor vehicle accidents. Kramer v. Ellett, 121 P.3d 406, 410 (Haw. 2005). Section (a) of the Auto Liability Statute states:

> (a) Except as provided in subsection (b), this article abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:
> (1) Owner, operator, or user of an insured motor vehicle;...

H.R.S. § 431:10C-306(a) (2008).

Hawaii law defines "motor vehicle accident" as "an accident arising out of the operation, maintenance, or use of a motor vehicle, including an object drawn or propelled by a motor vehicle." H.R.S. § 431:10C-103 (2008). "Operation, maintenance, or use with respect to motor vehicle" is defined as, "occupying, entering into, and alighting from it, but does not include... Conduct in the course of loading or unloading the vehicle, unless the accidental harm occurs in the immediate proximity of the vehicle[.]" Id.

Defendants argue that the Auto Liability Statute limits liability in this case because the alleged injury to Plaintiff occurred in the immediate proximity of loading a motorized

14

vehicle.  This argument, however, fails for three reasons.

**1.    The Auto Liability Statute does not apply to Plaintiff's claims**

Plaintiff alleges that Defendant Kapela discriminated against her when he refused to transport her in his taxicab and acted negligently as a common carrier.  The Auto Liability Statute applies to injuries arising from the operation, maintenance, or use of a motor vehicle.  Id.  While Plaintiff's claims arise in the context of soliciting a taxicab, her claims did not occur while a vehicle was being operated, used, or maintained.  Plaintiff's claims arise from Defendant Kapela's alleged refusal to transport Plaintiff and her wheelchair.  The Auto Liability Statute was designed to establish a no-fault statutory scheme for automobile accidents, not limit liability of alleged civil rights violations and egregious negligence because they took place near a motor vehicle.  See Crawford v. Crawford, 745 P.2d 285, 287-288 (Haw. 1987) (discussing how the Auto Liability Statute forms the bedrock of a no-fault liability system for automobile accidents).  The Auto Liability Statute does not apply to Plaintiff's claims because there was no operation, maintenance, or use of a motorized vehicle.

**2.    The Auto Liability Statute does not limit liability for intentional acts or punitive damages**

H.R.S. § 431:10C-306(e) does not eliminate liability for car

accidents caused by intentional conduct or conduct that would give rise to punitive damages.  H.R.S. § 431:10C-306(e)(2) (2008).[2]  Plaintiff is suing Defendants for intentionally removing her motorized wheelchair from the taxicab trunk, and for intentionally discriminating against her.  Plaintiff alleges that Defendant Kapela's conduct was so intentional and egregious that it warrants punitive damages.  In State Farm Fire & Casualty Co. v. Tringali, the Ninth Circuit Court of Appeals discussed the

---

[2]  H.R.S. § 431:10C-306(e) states in-full (emphasis added):

(e) No provision of this article shall be construed to exonerate, or in any manner to limit:

   (1) The liability of any person in the business of manufacturing, retailing, repairing, servicing, or otherwise maintaining motor vehicles, arising from a defect in a motor vehicle caused, or not corrected, by an act or omission in the manufacturing, retailing, repairing, servicing, or other maintenance of a vehicle in the course of the person's business;

   (2) The criminal or civil liability, including special and general damages, of any person who, in the maintenance, operation, or use of any motor vehicle:

      (A) Intentionally causes injury or damage to a person or property;

      (B) Engages in criminal conduct that causes injury or damage to person or property;

      (C) Engages in conduct resulting in punitive or exemplary damages; or

      (D) Causes death or injury to another person in connection with the accident while operating the vehicle in violation of section 291E-61 or section 291-4 or 291-7, as those sections were in effect on or before December 31, 2001.

Auto Liability Statute.[3]  686 F.2d 821, 825 (9th Cir. 1982).  The court held that when an individual engages in intentional conduct and causes the accident, the no-fault provisions of the Auto Liability Statute do not apply.  Id.  In the present case, the Plaintiff is alleging intentional conduct.  The Auto Liability Statute's no-fault provisions do not provide a viable defense.

**3.   The Auto Liability Statute does not limit liability for property damage**

H.R.S. § 431:10C-306(f) of the Auto Liability Statute states that, "[n]o provision of this section shall be construed to abolish tort liability with respect to property damage arising from motor vehicle accidents."  Even if we assume that the alleged incident was a "motor vehicle accident," liability for property damage is not abolished.  Plaintiff is suing Defendants for disabling her motorized wheelchair.  Such property damage is not barred by the Auto Liability Statute.

H.R.S. § 431:10C-306, the Auto Liability Statute, does not bar recovery by the Plaintiff and does not provide a viable defense.  Summary judgment with regard to Defendants' Auto Liability Statute defense is **DENIED**.

---

[3]Former H.R.S. Chapter 294(d)(2) and (3) was the predecessor to the Auto Liability Statute, and reflects nearly identical language.  See Del Rio v. Crake, 87 Haw. 297, 304 (1998).

**IV.  DEFENDANTS DID NOT OWE A DUTY TO PROTECT PLAINTIFF FROM INJURIES SUSTAINED WHILE USING HER MANUAL WHEELCHAIR**

To establish a *prima facie* case of negligence, the plaintiff must establish,

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
> 2. A failure on the defendant's part to conform to the standard required: a breach of the duty;
> 3. A reasonably close causal connection between the conduct and the resulting injury; and
> 4. Actual loss or damage resulting to the interests of another.

Knodle v. Waikiki Gateway Hotel, 742 P.2d 377, 383 (Haw. 1987).

Plaintiff alleges she sustained elbow injuries while using her manual wheelchair seven months after her motorized wheelchair was allegedly disabled by Defendants.  Defendants maintain that any injury Plaintiff sustained while using her manual wheelchair was not reasonably foreseeable and not within the scope of the duty owed to Plaintiff.

The concept of foreseeability applies to the existence and scope of the defendant's duty.[4]  Pulawa v. GTE Hawaiian Tel, 143 P.3d 1205, 1215 (Haw. 2006).  A defendant's duty is determined by examining the facts at the time of the incident to see if the alleged injury was a reasonably foreseeable risk.  Bidar v.

---

[4]Foreseeability also applies in evaluating the existence of proximate cause.  See Pulawa v. GTE Hawaiian Tel, 143 P.3d 1205, 1215 (Haw. 2006). Here, the Court evaluates the issue of foreseeability solely in the context of duty.

AMFAC, Inc., 669 P.2d 154, 158 (Haw. 1983) (quoting Atl. Mut.
Ins. Co. v. Kenney, 591 A.2d 507, 515 (Md. 1991)); see Pulawa,
143 P.3d at 1215 (quoting Clohesy v. Food Circus Supermarkets,
694 A.2d 1017, 1021 (N.J. 1997)).  The defendant does not owe a
duty to protect the plaintiff against a harm that was not
reasonably foreseeable.  Pulawa, 143 P.3d at 1215.  When
evaluated in this context, the issue of foreseeability is solely
a question of law.  Bidar, 669 P.2d at 158.

     Plaintiff states that she sustained elbow injuries as a
result of having to use a manual wheelchair for seven months
following the incident.  At issue, is whether Defendants owed
Plaintiff a duty to protect against elbow injuries occurring
months after the alleged incident.

     Plaintiff uses her manual wheelchair when her motorized
wheelchair is unavailable.  Plaintiff testified that she brings
her manual wheelchair with her when she travels as a back-up.  It
is not reasonably foreseeable that Plaintiff would own and use a
wheelchair that causes elbow injuries.  Defendants' duty arose as
a prospective taxicab driver.  Defendants were required to
protect Plaintiff from reasonable risks of harm. Yoneda v. Tom,
133 P.3d 796, 803 (Haw. 2006) (quoting Restatement (Second) of
Torts § 314A (1965)).  That duty, however, was limited to
reasonable risks, and Plaintiff's decision to use a manual
wheelchair that caused elbow injury does not fall within

Defendants' foreseeable duty of care.

Defendants' Motions for Partial Summary Judgment are **GRANTED** in part.  Defendants are not responsible for any injuries Plaintiff's elbow may have sustained while using her manual wheelchair.


## V.   THE ISSUE OF POSSIBLE PUNITIVE DAMAGES REMAINS

A claim of punitive damages is not an independent tort but is incidental to the cause of action. See Kang v. Harrington, 587 P.2d 285 (Haw. 1978).  State law governs whether punitive damages are warranted.  See Miller v. Republic Nat'l Life Ins. Co., 789 F.2d 1336, 1338-1339 (9th Cir. 1986).  Under Hawaii law, "[p]unitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future."  Masaki v. Gen. Motors Corp., 780 P.2d 566, 570 (Haw. 1989).

The Supreme Court of Hawaii states that to warrant punitive damages,

> "[t]he plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences."

20

Ass'n of Apt. Owners v. Venture 15, Inc., 167 P.3d 225, 290 (Haw.
2007)(quoting Masaki, 780 P.2d at 570).  At the heart of
determining whether to award punitive damages is an inquiry
focused on the defendant's mental state and the nature of his
conduct.  Masaki, 780 P.2d at 570.

   Defendants allege Defendant Kapela's was not "wanton,
oppressive or malicious to try and remove from one's taxicab a
wheelchair that prevents the rear hatch from closing when the
owner refuses to remove it." (Defendant Alexander Kapela's
Motion of Partial Summary Judgment at p. 13. (Doc. 71).)
Plaintiff alleges that the rear hatch could close and that
Defendant Kapela got upset and threw Plaintiff's wheelchair to
the ground.  She alleges that Defendant Kapela was motivated by
discriminatory intent when he ordered Plaintiff out of his
taxicab.  Here, there is a material issue of fact regarding
Defendant Kapela's conduct.  Determining whether punitive damages
are warranted at this stage is improper.  The very conduct that
dictates the possibility of punitive damages remains in dispute.

   Summary judgment with regard to punitive damages is **DENIED**.


                          **CONCLUSION**

   (1)  Defendant Alexander Kapela's Motion for Partial Summary

        Judgment, filed September 9, 2009, (Doc. 66), is

        **GRANTED** in part and **DENIED** in part;

                              21

(2)   Defendant Mel's Taxi, LLC's Motion for Partial Summary
      Judgment, filed September 9, 2009, (Doc. 71), is
      **GRANTED** in part and **DENIED** in part.

(3)   Defendants are not liable for any injuries Plaintiff
      sustained to her elbow through use of her manual
      wheelchair after her motorized wheelchair was disabled.
      The remainder of Defendants' Motions are **DENIED**.

IT IS SO ORDERED.

DATED:    November 18, 2010, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

Lynn Deas v. Mel's Taxi, LLC, and Alexander Kapela, Civ. No. 08-
00534 HG-LEK; **ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS ALEXANDER KAPELA AND MEL'S TAXI, LLC'S MOTIONS
FOR PARTIAL SUMMARY JUDGMENT (DOCS. 66 & 71).**